COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

STATE OFFICE OF RISK                                    No. 08-10-00278-CV
MANAGEMENT,                         §
                                                                      Appeal from
                Appellant,          §
                                                        County Court at Law No. 7
v.                                  §
                                                          of El Paso County, Texas
LINDA RODRIGUEZ,                    §
                                                              (TC # 2009-815)
                Appellee.           §


**O P I N I O N**

This is an interlocutory appeal of an order overruling the State Office of Risk Management's second plea to the jurisdiction. Linda Rodriguez appealed a worker's compensation claim to the district court from the Texas Department of Insurance-Division of Workers' Compensation. She asked the district court to review the Division's determination that she reached maximum medical improvement on June 30, 2000 with an impairment rating of 5 percent. SORM filed a second plea to the jurisdiction arguing no justiciable issue existed because only one valid impairment rating was presented to the Division.[1] The trial court overruled the plea, and SORM appeals.

**FACTUAL AND PROCEDURAL BACKGROUND**

On or around June 30, 1998, Rodriguez sustained a compensable injury to her hands, wrists,

---

[1] SORM's original Plea to the Jurisdiction was filed on July 20, 2009. The trial court denied the plea and SORM filed an accelerated appeal. It asked for permission to abandon its claims because it no longer wished to prosecute the appeal. On October 7, 2009, we granted relief. On June 24, 2010 SORM filed a no-evidence and traditional motion for summary judgment and on August 6, 2010 it filed its second plea to the jurisdiction. The trial court overruled both motions.

and shoulders while working for the Texas Department of Human Services in El Paso.[2] On June 30, 2000, Rodriguez reached her statutory date of maximum medical improvement ("MMI").[3] Approximately seven years later, on March 15, 2007, Rodriguez sought a whole body impairment rating (IR) from her treating physician, Terren Klein, M.D.[4] Dr. Klein examined Rodriguez and certified her with a 24 percent IR under the AMA Guides Fourth Edition. Subsequently, Dr. Klein amended Form 69 using the AMA Guides Third Edition and assigned a 25 percent IR.

---

[2] A "compensable injury" is defined as "an injury that arises out of and in the course and scope of employment for which compensation is payable." TEX.LAB.CODE ANN. § 401.011(10)(West 2006).

[3] The date of "maximum medical improvement" ("MMI") is the earlier of:

> (A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated;
>
> (B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or
>
> (C) the date determined as provided by Section 408.104.

28 TEX.ADMIN.CODE § 130.1(b)(1)(West 2011); TEX.LAB.CODE ANN. § 401.011(30). An MMI must be certified before an impairment rating is assigned. 28 TEX.ADMIN.CODE § 130.1(b)(2). Certification of MMI is a finding made by an authorized doctor that an injured employee has reached MMI as defined above. 28 TEX.ADMIN.CODE § 130.1(b)(3). To certify MMI the certifying doctor shall:

> (A) review medical records;
>
> (B) perform a complete medical examination of the injured employee for the explicit purpose of determining MMI (certifying examination);
>
> (C) assign a specific date at which MMI was reached.
>
> > (i) The date of MMI may not be prospective or conditional.
> >
> > (ii) The date of MMI may be retrospective to the date of the certifying exam.
>
> (D) Complete and submit required reports and documentation.

28 TEX.ADMIN.CODE § 130.1(b)(4). "A doctor who certifies that an injured employee has reached MMI shall assign an impairment rating for the current compensable injury using the rating criteria contained in the appropriate edition of the AMA Guides to the Evaluation of Permanent Impairment, published by the American Medical Association (AMA Guides)." 28 TEX.ADMIN.CODE § 130.1(c)(2).

[4] An impairment rating is defined as "the percentage of permanent impairment of the whole body resulting from the current compensable injury." 28 TEX.ADMIN.CODE § 130.1(c)(1); *see also* TEX.LAB.CODE ANN. § 401.011(24) ("Impairment rating means the percentage of permanent impairment of the whole body resulting from a compensable injury.").

On June 29, 2007, the Division's designated doctor, Howard Douglas, M.D., examined Rodriguez. He assigned her a 5 percent impairment rating pursuant to the Fourth Edition. In response to a letter from the Division advising Third Edition should be utilized, Dr. Douglas re-evaluated his reports and submitted an amended Form 69, again assigning a 5 percent IR. The record also shows that on January 7, 2000, Dr. Thomas Alost (Rodriguez's then treating doctor) examined Rodriguez and certified that she reached MMI on that date with a 7 percent IR using the Third Edition.

Although the parties agreed to several important facts, they could not agree on the correct impairment rating. So, on May 6, 2008, the Division held a contested hearing to determine Rodriguez's IR. The parties stipulated that: (1) on June 30, 1998, Rodriguez sustained a compensable injury; (2) Rodriguez reached her statutory MMI date on June 30, 2000; (3) on March 15, 2007, Dr. Klein assigned a 25 percent IR; (4) the Division's designated doctor is Dr. Douglas; and (5) on June 29, 2007, Dr. Douglas assigned a 5 percent IR. It is also undisputed that the AMA Guides Third Edition is to be used for the assignment of the IR in this case. Accordingly, the sole issue in dispute was the correct IR for Rodriguez.

The hearing officer determined Rodriguez's IR to be 5 percent as assigned by Dr. Douglas. The hearing officer's decision was based on her determination that the report of the designated doctor has presumptive weight, and she adopted that IR because it was not contrary to the great weight of other medical evidence.[5] She also noted there was a difference of medical opinion

---

[5] Under Texas Labor Code, Section 408.125:

(a) If an impairment rating is disputed, the commissioner shall direct the employee to the next available doctor on the division's list of designated doctors, as provided by Section 408.0041.

. . . .

(c) The report of the designated doctor shall have presumptive weight, and the division shall base the

between Dr. Douglas and Dr. Klein, but that Dr. Douglas's assigned 5 percent IR was supported by a preponderance of the evidence. Rodriguez appealed contending the hearing officer's adoption of the designated doctor's assigned IR of 5 percent was contrary to the preponderance of the other medical evidence and urged the adoption of Dr. Klein's assigned rating. She also asserted that Dr. Douglas's IR could not be adopted because his narrative report stated that Rodriguez met the criteria for a 31 percent IR, but that Dr. Douglas refused to assign that rating because of his belief that Rodriguez could not still be injured such a long time after her initial date of injury.

The Division Appeals Panel found that in Dr. Douglas's amended Form 69, based on the Third Edition, he failed to explain how he arrived at a 5 percent IR. Because the rating was unsupported by the evidence, the Appeals Panel held that it could not be adopted and reversed the hearing officer's decision. The panel also found that Dr. Klein attempted to certify an invalid IR because his initial determination of a 24 percent IR was calculated using the wrong edition of the AMA Guidelines. The Appeals Panel also determined that in revising his error, Dr. Klein inaccurately and inconsistently calculated Rodriguez's IR at 25 percent. The panel noted that using the proper impairment rating, Dr. Klein's IR should have been 23 percent. Finally, the Appeals Panel invalidated the seven percent impairment rating of Rodriguez's first treating doctor because it was assigned prospectively to the MMI date of June 30, 2000. The Appeals Panel remanded the case to the Division hearing officer in order to determine whether Dr. Douglas certified a statutorily valid IR. The Appeals Panel instructed the hearing officer to:

> [A]dvise the designated doctor that an impairment rating must be assigned as of the

---

impairment rating on that report unless the preponderance of the other medical evidence is to the contrary. If the preponderance of the medical evidence contradicts the impairment rating contained in the report of the designated doctor chosen by the division, the division shall adopt the impairment rating of one of the other doctors.

TEX.LAB.CODE ANN. § 408.125(a), (c).

date of MMI and for the designated doctor to provide an explanation for the 5% impairment rating he assigned in accordance with Rule 130.1(c)(3) and the Third Edition of the AMA Guides or to assess a new impairment rating based on [Rodriguez's] condition as of the date of MMI.

After the case was remanded, a letter of clarification was sent to Dr. Douglas who asked to re-examine Rodriguez. On August 28, 2008, Dr. Douglas performed the re-examination and again assigned Rodriguez a 5 percent impairment rating, this time pursuant to the Third Edition. The hearing officer again determined Rodriguez's IR to be 5 percent based on Dr. Douglas's report and examination. Once again, Rodriguez appealed the decision to the Division Appeals Panel and the panel affirmed the hearing officer's decision.

Rodriguez then sought judicial review of the Division Appeals Panel decision. On August 6, 2010, SORM filed its second plea to the jurisdiction contending that no justiciable controversy existed because only one valid impairment rating was before the court. The trial court overruled the motion and this appeal follows.

## STANDARD OF REVIEW AND APPLICABLE LAW

The purpose of a plea to the jurisdiction is to dismiss a cause of action without regard to whether the claim has merit. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is a dilatory plea that challenges the court's power to adjudicate the subject matter of the controversy. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland ISD*, 34 S.W.3d at 554; *Texas Department of Transportation v. Arzate*, 159 S.W.3d 188, 190 (Tex.App.--El Paso 2004, no pet.). Subject matter jurisdiction is essential to the authority of a court to decide a case. *Bland ISD*, 34 S.W.3d at 553-54. Subject matter jurisdiction cannot be conferred by consent and cannot be waived. *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010); *Continental Coffee Products, Co. v. Cazarez*, 937 S.W.2d 444, 448 n.2 (Tex. 1996). Whether a party has alleged facts that

affirmatively demonstrate a trial court's subject matter jurisdiction and whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction are questions of law which we review *de novo*. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Texas Natural Resource Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 226. When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Bland ISD*, 34 S.W.3d at 555. The plaintiff bears the burden to allege facts demonstrating jurisdiction, and we construe the pleadings liberally in the plaintiff's favor. *Id*. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227-28; *see City of Elsa*, 325 S.W.3d at 626. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

*Impairment Rating*

An employee receives impairment income benefits according to the employee's impairment rating, which is the percentage of the whole body's permanent impairment. *See* TEX.LAB.CODE ANN. §§ 401.011(24), 408.124. To determine the impairment rating, an examining doctor evaluates the permanent effect of the employee's injury under statutory guidelines. *See* TEX.LAB.CODE ANN. § 408.124. The doctor expresses the rating as a percentage of permanent impairment to the whole body. *See* TEX.LAB.CODE ANN. §§ 401.011(24), 408.124. The greater this percentage, the greater the amount the employee receives as impairment income benefits. *See Texas Workers'*

*Compensation Commission v. Garcia*, 893 S.W.2d 504, 514 (Tex. 1995). The impairment rating may also qualify an employee for supplemental income benefits, which provide long-term disability compensation. *See* TEX.LAB.CODE ANN. § 408.142; *see also Garcia*, 893 S.W.2d at 514.

A doctor will not certify an impairment rating until the employee reaches maximum medical improvement, the point at which the employee's injury will not materially improve with additional rest or treatment. *See* TEX.LAB.CODE ANN. § 408.121. The date of maximum medical improvement is fixed when an examining doctor certifies that no further material recovery or lasting improvement can reasonably be anticipated. *See* TEX.LAB.CODE ANN. §§ 401.011(30), 408.123. The Act presumes that maximum medical improvement will be reached not later than two years after income benefits begin to accrue. *See* TEX.LAB.CODE ANN. § 401.011(30).

Until an employee reaches maximum medical improvement, he or she may receive temporary income benefits. *See* TEX.LAB.CODE ANN. §§ 408.101-.102. These benefits are paid weekly to compensate for lost wages during the employee's convalescence. *See Garcia*, 893 S.W.2d at 513. Once an employee reaches maximum medical improvement, temporary income benefits end. *See* TEX.LAB.CODE ANN. §§ 408.101(a), 408.102(a). Whether the injured employee receives any additional income benefits depends largely on the assigned impairment rating. *See* TEX.LAB.CODE ANN. §§ 408.121(a), 408.142.

### Modified De Novo Review

In *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 253 (Tex. 1999), the Texas Supreme Court determined that an appeal challenging the employee's impairment rating fell under Section 410.301 because it "directly affects eligibility for and the amount of benefits due." *Rodriguez*, 997 S.W.2d at 253. The court noted:

Any dispute that challenges an impairment rating's finality necessarily implicates the

date of maximum medical improvement and the amount paid as temporary income benefits. This dispute may also impact the employee's eligibility for, and the calculation of, impairment income benefits and supplemental income benefits. Disputes about an injured employee's impairment rating are, therefore, disputes about benefits. Because the modified de novo standard of review applies to these types of benefit disputes, that standard also applies to impairment rating disputes, including disputes that challenge an impairment rating's finality.

*See id*. at 254; *see also Garcia*, 893 S.W.2d at 528; *American Zurich Insurance Co. v. Samudio*, 317 S.W.3d 336 (Tex.App.--Houston (1st Dist.) 2010, pet. filed)(cases applying a modified *de novo* standard of review).

Modified de novo review means: (1) the trial court is informed of the Appeals Panel's decision; (2) evidence of the extent of impairment is limited to that presented to the TWCC, unless the court makes a threshold finding that the claimant's condition has substantially changed; and (3) the court is required to adopt the specific impairment rating arrived at by one of the physicians in the case. TEX.LAB.CODE ANN. §§ 410.304, 410.306-.307 (West 2006); *Garcia*, 893 S.W.2d at 528. The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence. TEX.LAB.CODE ANN. § 410.303.

## ANALYSIS

In its sole issue, SORM contends the trial court erred in denying its second plea to the jurisdiction for lack of a justiciable controversy. It complains that Dr. Douglas's 5 percent impairment rating is the only valid rating because, "the other attempted ratings violated the rules that dictate how impairment ratings must be certified" and thus, as a matter of law, the trial court is bound to accept Dr. Douglas's 5 percent rating.

Rodriguez counters that: (1) the court and jury are free to consider the report and testimony of her treating doctor who noted her final rating to be 23 percent which he corrected from 25 percent after being informed that he had made a mathematical error; and (2) she properly presented

Dr. Klein's 23 percent IR on remand because an explanation of his mathematical error and correction of that error was sufficient, and there is nothing legally requiring a new narrative report or a new Form 69.

A plea to the jurisdiction is proper to challenge the lack of a justiciable issue. To present a justiciable issue, a lawsuit must involve a real controversy that will be resolved by the relief sought. Texas workers' compensation cases fall under the Texas Workers' Compensation Act ("the Act") codified in the Texas Labor Code. TEX.LAB.CODE ANN. § 401.001 *et seq*. Under the Texas Labor Code, a court or jury must adopt a valid impairment rating that has been presented to the Division. *See* TEX.LAB.CODE ANN. § 410.306(c)("Except as provided by Section 410.307, evidence of extent of impairment shall be limited to that presented to the division. The court or jury, in its determination of the extent of impairment, shall adopt one of the impairment ratings under Subchapter G, Chapter 408.").

It is clear from the record that the correct IR percentage has consistently been the only issue disputed in this case. In the initial appeal, the relevant IRs submitted were: (1) a 5 percent IR assigned by Dr. Douglas which the panel invalidated because it was not supported by an adequate explanation; (2) a 24 percent impairment rating assigned by Dr. Klein which was invalidated because Dr. Klein based his rating on the wrong edition of the AMA Guides; and (3) a 25 percent impairment rating assigned by Dr. Klein which the panel invalidated because in using his measurements, Dr. Klein incorrectly calculated Rodriguez's IR and noted that proper calculations would have equated to 23 percent. According to the hearing officer's order on remand, Dr. Douglas conducted a re-examination of Rodriguez in August 2008 and provided a thorough and detailed explanation as to how he once again reached a 5 percent IR. The hearing officer then stated:

Dr. Klein responded to Dr. Douglas' report indicating that the impairment rating

should be 23%; however, Dr. Klein failed to submit an amended report or a new DWC-69 to substantiate his opinion. Considering the additional evidence presented since the initial hearing, the preponderance of the evidence is not contrary to the opinion of Dr. Douglas and his 5% impairment rating should be adopted.

Clearly, a new 5 percent IR from Dr. Douglas as well as evidence supporting a new 23 percent impairment rating by Dr. Klein were before the hearing officer on remand.

Essentially SORM's argument is that, on appeal from remand, Rodriguez did not request the Appeals Panel to review whether the hearing officer could consider Dr. Klein's amended 23 percent IR absent a new Form 69. Therefore, it contends Rodriguez waived the issue and cannot now seek judicial review. But nothing in the record indicates that Rodriguez ever disputed the 5 percent IR for any reason other than Dr. Klein's IR was the proper rating to be adopted. If we accept SORM's argument that Rodriguez did not raise the issue of whether the court could accept Dr. Klein's IR, then what are we to believe was appealed to the Division's Appeals Panel? We reject the argument that evidence of Dr. Douglas's 5 percent IR was the only rating before the Division post-remand.

SORM also asserts that Rodriguez failed to preserve error of the Division's decision invalidating Dr. Klein's 23 percent IR because Rodriguez failed to specifically articulate the issue in her pleadings to the trial court as required under Section 410.302(b) of the Texas Labor Code. *See* TEX.LAB.CODE ANN. § 410.302(b)("A trial under this subchapter is limited to issues decided by the appeals panel and on which judicial review is sought. The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved."). SORM argues Rodriguez's pleadings asked only that the trial court reverse the 5 percent finding by the Division. It must be remembered that this is an appeal from a denial of a plea to the jurisdiction. Unless it is clear from the pleadings that the court does not have jurisdiction over the controversy, the court should retain the case. *See Perry v. Equipment Service Co. of San Antonio,* 779 S.W.2d 802, 804

(Tex. 1989). If the jurisdictional defect is a pleading defect that can be cured by amendment, it should be challenged by special exceptions. We do not find the pleadings clearly indicate the trial court does not have jurisdiction.

Finally, SORM asserts that Dr. Klein's 23 percent rating is not valid because it fails to satisfy the requirements set forth in the Texas Labor Code and therefore only one IR is before the trial court, eliminating any controversy. Although it may be true that Dr. Klein's 23 percent IR merely adopted the Appeals Panel explanation without checking for himself that he had made the error or whether the initial 25 percent IR submitted on the amended Form 69 was an error in applying the Guidelines rather than a clerical error as SORM contends, it appears there is a justiciable issue present.

Here, the only valid Form 69 submitted by Dr. Klein assigned an impairment rating at 25 percent. On remand, rather than submit a new Form 69, Dr. Klein certified a 23 percent IR through briefing to the hearing officer. SORM claims that because Dr. Klein failed to submit a narrative report or Form 69 Report of Evaluation substantiating this new finding, the twenty-three percent IR does not comply with Texas Labor Code Section 408.123(b) or Texas Administrative Code 130.1(d) and is legally invalid. But Texas jurisprudence does not always require a doctor to complete an entirely new Form 69 when amending an assigned IR. *See Samudio*, 317 S.W.3d at 348-49; *Pacific Employer's Ins. Co. v. Brown*, 86 S.W.3d 353 (Tex.App.--Texarkana 2002, no pet.). The fact finder lacks authority to comprise its own IR and must accept one of the IRs presented to the Division. The *only* recognized exception to that rule is if the court makes a threshold finding that the claimant's conditions have substantially changed. However, cases have held that where one of the IRs presented before the Division contains a clear mathematical error, the fact finder is free to correct the minor clerical error and choose between the corrected IR and any other IRs presented. *See Old Republic Ins. Co. v. Rodriguez*, 966 S.W.2d 208, 210-11 (Tex.App.--El Paso 1998, no pet.); *Brown*,

86 S.W.3d at 361-62. The required reports were all submitted by Dr. Klein as part of his initially assigned 25 percent IR. The determination of whether or not Dr. Klein's mistake was "mathematical" as it was described by the Division and as Rodriguez contends, or whether the 23 percent IR constitutes a new IR which would require completely new reports is a justiciable issue which the trial court has jurisdiction to decide. We overrule SORM's sole point and affirm the judgment of the trial court.

August 26, 2011

                                                 
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.